UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN DOE HM, *an individual*,                    )
                                                 )
            Plaintiff,                           )
                                                 )
      vs.                                        )            Case No. 4:07CV00946 ERW
                                                 )
CITY OF CREVE COEUR, MISSOURI, et al.,  )
                                                 )
            Defendants.                          )

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Motion for Summary Judgment of Defendants

Sergeant Thomas Lasater, Officer Michael Thomeczek, St. Louis County Missouri, and Colonel

Jerry Lee [doc. #113].

**I.      Background Facts[1]**

On December 31, 2005 at 1:03 PM, the St. Louis County Police Department received a

911 call from Lisa Doe ("Lisa"), who stated that her then-estranged husband, John Doe HM

("Plaintiff"), had recently left her home in an upset state of mind, had written a suicide note, and

was in possession of at least one firearm.  Plaintiff, a police officer with the Creve Coeur Police

Department, had visited her home earlier that day to speak to Lisa and see their children.  Plaintiff

was visibly upset when he arrived, and told Lisa that he was leaving and had come to say

goodbye, but that he had set up things financially for Lisa and their children.  Shortly after

Plaintiff left, Lisa spoke with Plaintiff's sister, Shelly Doe ("Shelly"), who told her that Plaintiff

_____

[1]The Court's recitation of the facts is taken from Defendants' Statement of
Uncontroverted Facts, Plaintiff's Responses to Defendants' Statement of Facts, Plaintiff's
Additional Statement of Facts, and Defendants' Reply to Plaintiff's Responses to Defendants'
Statement of Facts.

had written a suicide note. Shelly had not seen the alleged note; she heard about it through a string of conversations that began with a woman named Crystal, with whom Plaintiff had been having an on-again, off-again relationship while separated from Lisa. Crystal told Plaintiff's nephew about the note, and ultimately this information made its way to Shelly.

Concerned about Plaintiff, Lisa told the 911 operator the type of vehicle Plaintiff was driving and the direction he was traveling. The 911 dispatcher then sent out a radio alert to which Defendants Sergeant Thomas Lasater ("Lasater") and Officer Michael Thomeczek ("Thomeczek") responded. Both Lasater and Thomeczek had received training in dealing with mental health issues and were Crisis Intervention Team ("CIT") certified. The dispatcher informed Lasater and Thomeczek, who were traveling in separate vehicles at the time, that Plaintiff was an off-duty police officer and had left his home with a gun after leaving "notes" to his family members. Lasater spoke to a dispatcher supervisor over the phone, who told him that there was some concern that Plaintiff intended to commit suicide.[2]

Thomeczek was first to locate Plaintiff. Thomeczek saw Plaintiff driving in the opposite direction, so he turned on his emergency lights to make a u-turn. Thomeczek then turned his lights off and followed Plaintiff as Plaintiff turned into a parking lot. Plaintiff turned to the left and came to a stop,[3] and Thomeczek again activated his emergency lights and exited his vehicle.

_____

[2]Plaintiff disputes that this conversation took place, but provides no legitimate basis for doing so. Plaintiff cites to the "CAD Log" detailing the radio communications between the 911 dispatcher and the responding officers, which does not confirm or refute that the call took place. Lasater related the contents of the phone call in his deposition testimony. Plaintiff cannot turn an uncontroverted fact into a controverted fact simply by labeling it as such. *See* Local Rule 7-4.01(E).

[3]The parties dispute how Plaintiff came to a stop. Thomeczek contends that Plaintiff executed a "highly aggressive u-turn" and the vehicles stopped nose-to-nose – a maneuver Defendants claim Plaintiff used intentionally in order to place Thomeczek at a tactical disadvantage. Plaintiff claims that Plaintiff was turning to the left toward some parking spaces

Thomeczek drew his weapon and ordered Plaintiff, who was still in his vehicle, to put his hands up.[4]  Plaintiff informed Thomeczek that he had a loaded firearm in his right-side holster; police also seized another loaded firearm from the passenger compartment of the vehicle.

Some moments later, Lasater arrived at the parking lot and, as watch commander, took control of the scene.  Thomeczek spoke to Crystal on the phone, who confirmed that there was a suicide note and that she was concerned that Plaintiff would harm himself.[5]  Based on what they had learned, Lasater and Thomeczek determined that Thomeczek would take Plaintiff to St. Anthony's Medical Center ("St. Anthony's") for a psychiatric evaluation.

---

when Thomeczek entered the lot at a high rate of speed and nearly collided with the left side of Plaintiff's vehicle.

[4]The parties dispute whether Thomeczek had to order Plaintiff to put up his hands multiple times before he complied.

[5]Defendants claim that Lasater and Thomeczek had two additional telephone conversations before they decided to take Plaintiff to St. Anthony's.  Thomeczek claims that he spoke to a woman who identified herself as Plaintiff's wife, who stated that Plaintiff had left their home after a disagreement earlier that day.  Thomeczek stated that she told him that Plaintiff said "don't worry about it, you're going to get all the money, and everything is going to be okay" and then said goodbye to his daughters.  Plaintiff claims this conversation is fabricated, based on Lisa's deposition testimony that she did not recall having such a conversation with Thomeczek. Lisa did state in her deposition, however, that before leaving her home, Plaintiff told her "that the girls and I would be fine.  He told me that he had things set up financially, and we would be okay."  The Court finds it implausible that Thomeczek concocted this conversation with Lisa yet managed to come up with essentially the same details, but given that it is possible that Thomeczek learned this information elsewhere, the Court considers the fact of whether this conversation took place controverted.
    Defendants also contend that Lasater intercepted a call to Plaintiff from Plaintiff's brother, Mark Doe ("Mark"), who confirmed that Plaintiff had been depressed, at least partially due to his involvement in pending civil litigation.  Lasater claims that Mark further related that Plaintiff had discussed suicide and had indicated that he "wanted to drive his car into a pole, or a bridge, and go out like a hero."  Plaintiff admits that this call took place but disputes that Mark made those remarks.  The Court finds it highly irregular that Plaintiff disputes this based on an affidavit by Mark Doe – i.e., the affidavit gives the affiant's name as "Mark Doe" and is signed under that name – but the Court finds that this issue is irrelevant to the decision on Defendants' Motion.

3

Thomeczek took Plaintiff to the emergency room for an initial examination and submitted a sworn application in support of a maximum 96-hour involuntary commitment, setting out the information that he and Lasater had gathered. The examining emergency room doctor concluded that Plaintiff should be sent to Hyland Treatment Center ("Hyland"), the hospital's mental health unit, for further evaluation. Some time thereafter, Thomeczek and Lasater spoke, individually, with Crystal in the Hyland parking lot. Crystal refused to give them the alleged suicide note, but once again confirmed that it existed and that she was concerned about Plaintiff's well-being.

A social worker at Hyland conducted an interview with Plaintiff and noted that Plaintiff related, among other things, his history of depression, the fact that he was currently taking medication for depression, family dysfunction with respect to the relationships with Lisa and Crystal, the fact that his father was dying, his unhappy childhood, and problems related to his involvement in pending civil litigation. Upon completing the interview, the social worker contacted the psychiatrist on call in order to give her assessment and receive a decision on whether Plaintiff should be admitted. The psychiatrist decided to admit Plaintiff on an in-patient basis – i.e., involuntarily – and prescribed a mood stabilizer and an increase in Plaintiff's anti-depressant medication. After an appointment with the psychiatrist on the following day, Plaintiff was discharged into the care of his family on the condition that he see his treating physician and psychiatrist.

Having heard about the incident, Captain George Hodak ("Hodak") of the Creve Coeur Police Department called Lasater the following Saturday to request a copy of the police report,

which Lasater provided.[6]  The Creve Coeur Police Department ultimately made the decision to terminate Plaintiff's probationary employment.

## II.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2).  When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a

---

[6]Plaintiff again improperly attempts to controvert this fact, suggesting without factual support that Lasater contacted Hodak of his own volition.

genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III. DISCUSSION

Plaintiff asserts claims for violations of his constitutional rights under 42 U.S.C. § 1983 against Lasater, Thomeczek, St. Louis County ("the County"), and then-Chief of Police Colonel Jerry Lee ("Lee"), and state law claims against Lasater and Thomeczek for defamation, injurious falsehood, tortious interference with business expectancy, and false imprisonment. Defendants move for summary judgment on all claims.

### A. *Section 1983 Claims*

Defendants argue that there are no genuine issues of material fact with respect to Plaintiff's § 1983 claims against Lasater, Thomeczek, the County, and Lee. Specifically,

Defendants contend that (1) Lasater cannot be held liable under § 1983 for constitutional violations allegedly committed by Thomeczek; (2) there are no genuine issues of material fact concerning whether Lasater and Thomeczek violated Plaintiff's constitutional rights; (3) Lasater and Thomeczek are entitled to qualified immunity from Plaintiff's claims; and (4) there is no evidence of an unconstitutional County custom, policy, or failure to train that led to a violation of Plaintiff's rights.

## 1. Plaintiff's Claim against Lasater

Defendants first argue that Lasater is entitled to summary judgment on Plaintiff's § 1983 claim because Lasater was not directly involved in the conduct that Plaintiff alleges was unconstitutional – specifically, the submission of the allegedly invalid affidavit in support of Plaintiff's involuntary commitment.[7]  Plaintiff claims that Lasater is responsible for Thomeczek's conduct because Lasater, as watch commander and designated CIT supervisor, was responsible for all police conduct that occurred after he assumed control of the scene.

Individual liability under § 1983 requires a "causal link to, and direct responsibility for, the alleged deprivation of rights."  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). "There is no concept of 'supervisory strict liability' in § 1983 actions . . . something more must be shown than merely the existence of the supervisor-subordinate relationship."  *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987) (internal citations omitted).  For a supervising officer to be liable under § 1983 for the constitutional violation of a subordinate based on a failure to supervise – as Plaintiff apparently alleges here – the supervisor must have "demonstrated deliberate indifference or tacit authorization of the offensive acts."  *Tilson v. Forrest City Police Dep't*, 28 F.3d 802,

---

[7] Plaintiff asserts in one conclusory sentence, not supported by citation to authority, that Thomeczek's submission of an inaccurate police report also violated Plaintiff's constitutional rights.  The Court declines to consider this issue because Plaintiff has not otherwise argued it.

807 (8th Cir. 1994). A "single incident of negligent supervision" is not actionable under § 1983. *Rasmussen v. Larson*, 863 F.2d 603, 605 (8th Cir. 1988).

Plaintiff has neither alleged nor shown that Lasater was deliberately indifferent to or tacitly authorized Thomeczek's allegedly unconstitutional actions. Lasater stated that he was present at the scene before Thomeczek transported Plaintiff to the hospital and that he followed Thomeczek there, and Plaintiff has in no way contradicted that testimony.

Moreover, the fact that Lasater was officially in control of the scene does not, as Plaintiff alleges, mean that he would be responsible for all civil rights violations committed by subordinate officers.[8] This argument is directly contradicted by the above-cited cases holding that respondeat superior liability is not available in § 1983 actions. Plaintiff's allegations that Lasater failed to carry out a sufficient investigation are also insufficient to support a claim under § 1983, as more than simple negligence is required. Accordingly, the Court concludes that Lasater is entitled to summary judgment on Plaintiff's § 1983 claim.

### 2. Plaintiff's Claim against Thomeczek

Defendants next argue that summary judgment on Plaintiff's § 1983 claim against Thomeczek is proper because he is entitled to qualified immunity. Plaintiff claims that he has presented sufficient evidence to raise a genuine issue of material fact as to whether Thomeczek's actions violated a clearly established constitutional right.

---

[8]Plaintiff cites to *Handle v. City of Little Rock*, 772 F. Supp. 434 (E.D. Ark. 1991), in support of this proposition. In what is unfortunately a recurring phenomenon, Plaintiff completely misrepresents the material to which he cites. In *Handle*, the Court concluded that the defendant supervising police officers were entitled to summary judgment on the plaintiff's § 1983 claim. *Id.* at 439. Although the officers were present at the scene where their subordinates allegedly used excessive force, the Court determined that they were not directly responsible because they were standing outside the building in which the use of force took place and had no knowledge of the plaintiff's complaints at the time. *Id.* Any reasonable reading of *Handle* directly contradicts Plaintiff's position.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The applicability of qualified immunity is a question of law, and "the burden is on the plaintiff to plead *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008) (emphasis in original). In order for a plaintiff to overcome a government official's claim of qualified immunity at the summary judgment stage, the court must determine (1) that the plaintiff showed facts demonstrating that a constitutional right was violated; and (2) that the constitutional right was "clearly established" when the deprivation took place. *Pearson v. Callahan*, 129 S. Ct. 808, 816, 818 (2009) (overruling prior authority requiring a sequential test and instead leaving the sequence to the discretion of lower courts).

Plaintiff first contends that summary judgment is improper because the evidence indicates that Thomeczek violated Plaintiff's "constitutional right to be free from arbitrary detention in a mental health facility" by "detaining Plaintiff and writing an affidavit for him to be placed in a 96 hour hold."[9] Plaintiff does not dispute, however, that Thomeczek was justified in detaining Plaintiff and taking him to St. Anthony's for psychiatric evaluation on the basis of Lisa's 911

---

[9]At no point does Plaintiff make clear the constitutional basis for this "right." Because the Court concludes that Plaintiff's claims lack an adequate factual basis in the record, the Court does not address the issue of whether there is in fact such a constitutional right.

call.[10]  Thus, the gravamen of this claim appears to be that Thomeczek violated Plaintiff's Fourth Amendment rights because he did not have probable cause to detain Plaintiff at Hyland.

Plaintiff's claim fails because Thomeczek was not responsible for Plaintiff's detention at Hyland.  The Missouri procedure for temporary involuntary commitment provides that a peace officer may, under certain conditions, take a mentally ill person into custody for purposes of evaluation and treatment.  MO. REV. STAT. § 632.305.3 (1980).  Upon arriving at the mental health facility, the officer must submit an application for initial detention, for a period not in excess of 96 hours, based on his own personal observations or investigations.  *Id.*  In this application, the officer must allege under oath that he has "reason to believe that the respondent is suffering from a mental disorder and presents a likelihood of serious harm to himself or others." *Id.*; MO. REV. STAT. § 632.305.1 (1980).  The Missouri procedure provides, however, that when a facility receives an application from a peace officer, it "may, but is not required to, accept the application and the respondent."  MO. REV. STAT. § 632.310.2 (1980).  The facility may not rely solely on the affidavit in making that decision, moreover; it is still required to conduct an independent evaluation and admit or release the individual in accordance with the statutory standard of whether the individual "presents a likelihood of serious harm to himself or others." *Id.*; § 632.305.1.

The facts of this case demonstrate that, in accordance with the statutory procedure, Hyland made an independent decision whether to admit Plaintiff under § 632.305 once Thomeczek brought Plaintiff to the facility.  As mentioned above, Plaintiff does not contest the traffic stop or the period of detention prior to his commitment at Hyland.  Thus, to the extent

---

[10]Plaintiff's Response to Defendant's Statement of Facts, ¶ 38 ("Plaintiff does not contest that the Officers had the right to transport Plaintiff to the hospital for evaluation.  He concedes that likely the 911 call alone would provide justification for that.").

Plaintiff has any claim that there was insufficient cause to detain him at Hyland, that claim is not against Thomeczek.

Plaintiff next argues that Thomeczek violated Plaintiff's "right to treatment in the least restrictive environment" by failing to follow the statutory procedure for involuntarily admitting a patient for psychiatric evaluation. Although Plaintiff describes this right as "recognized by the U.S. Supreme Court for many years," Plaintiff provides no citation to authority.[11] Plaintiff does not claim that the statutory procedures are constitutionally deficient; instead, he argues that Thomeczek unconstitutionally relied on hearsay in the sworn application for his commitment and failed to contact a family member before seeking to have him committed.

Plaintiff has failed to demonstrate that Thomeczek improperly relied on hearsay in filling out the commitment application. The statute laying out the requirements for the application is clear that the contents must be based on "personal observations *or investigations*. MO. REV. STAT. § 632.305.3 (1980) (emphasis added). Thomeczek performed his own investigation by speaking directly with Crystal about the suicide note and Plaintiff's state of mind. Thomeczek also had personal knowledge of the two guns seized from Plaintiff's vehicle. Assuming for the sake of argument that a constitutional right is implicated here, there is still no basis in the record for Plaintiff's factual allegation that Thomeczek relied solely on hearsay in the initial application.

Plaintiff next contends that Thomeczek unconstitutionally violated St. Louis County Police Department guidelines – specifically, Special Operations Procedure 05-47: Care and

---

[11]In fact, Plaintiff's "treatment in the least restrictive environment" language appears to refer to the right of the mentally ill, once committed, to receive such treatment – a right that the U.S. Supreme Court has determined is *not* mandated by the Constitution or by federal statute and which therefore cannot support an action under § 1983. *See Pennhurst State School and Hosp. v. Halderman*, 451 U.S. 1, 18 (1981). As with Plaintiff's Fourth Amendment claim, however, the Court does not reach the issue of whether there is such a right as Plaintiff asserts here.

Transportation of the Mentally Ill ("the SOP") – by failing to contact a family member before transporting him to Hyland. Plaintiff cites to no authority suggesting that a violation of departmental guidelines is necessarily of constitutional significance. Moreover, the SOP – which was not even in effect at the time of the incident – also does not state that officers *must* contact family members; it merely refers to the presence of family members in order to distinguish between situations in which family members ask for assistance in effectuating an involuntary commitment, and those in which the officer acts without the family.

In sum, Plaintiff has failed to demonstrate that there is any genuine issue of material fact as to whether Thomeczek violated his constitutional rights. Plaintiff has not contested the initial stop and detention, and Thomeczek was not responsible for Plaintiff's temporary involuntary commitment at Hyland. Furthermore, Plaintiff has failed to demonstrate how Thomeczek's alleged violations of departmental guidelines or the affidavit requirements would be actionable under § 1983, and there is also no factual basis in the record from which reasonable persons could conclude that Thomeczek committed those violations. Accordingly, the Court finds that Thomeczek is entitled to summary judgment on Plaintiff's § 1983 claim.

### 3. Plaintiff's Claims against the County and Lee
### Based on an Unconstitutional Custom or Policy

Defendants contend that they are entitled to summary judgment on these claims because there is no evidence that any alleged violation of Plaintiff's civil rights resulted from a County policy, custom, or practice. Plaintiff argues that he has presented sufficient evidence of a County policy of relaxed standards in civil commitments.

Municipal entities may be liable for constitutional violations under § 1983 where an official policy or a widespread custom leads to the violation of a constitutional right. *Monell v. Dep't of*

*Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). A § 1983 action against an individual in her or his official capacity – here, Plaintiff's claim against Lee – is equivalent to a claim against the entity itself, requiring proof that an official custom or policy led to the constitutional deprivation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

The requirement of a custom or policy exists in order to ensure that the unconstitutional practice resulted from action that can fairly be attributed to the entity. *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403-04 (1997). As such, a plaintiff must show more than "a single set of circumstances" that relate only to the plaintiff in order to demonstrate the existence of a custom or policy. *Munz v. Parr*, 758 F.2d 1254, 1259 (8th Cir. 1985). Moreover, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Id.* at 404. "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged"; in other words, the plaintiff must prove "the requisite degree of culpability" and also "a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (emphasis in original).

Although Plaintiff contends that there is a widespread custom of "relaxed standards" for civil commitments,[12] there is no evidence of that in the record. Plaintiff seems to argue that the Court should infer evidence of a County custom of "relaxed standards" from the fact that none of

---

[12]In support of this contention, Plaintiff cites to paragraphs 50-75 of his Response to Defendant's Statement of Facts, which contain a significant number of allegations not supported by citations to the record, citations to depositions as a whole, and cross-references to other paragraphs that suffer from the same deficiencies – not to mention that the vast majority of paragraphs 50-75 have absolutely nothing to do with the contention in the first place. The Court recognizes the merit behind Defendants' suggestion that the Court should strike Plaintiff's deficient responses; Defendants fail to mention, however, that they also routinely cited to entire hundred-page depositions.

the police officers deposed by the parties took issue with the manner in which Defendant Thomeczek dealt with Plaintiff's commitment. The Court has already concluded that Thomeczek's actions were proper, however, and furthermore Plaintiff must present evidence beyond that of his own incident in order to demonstrate an unconstitutional County custom or policy. *Munz*, 758 F.2d at 1259. There is simply no record evidence indicating that other County officers have in fact carried out other civil commitments in the manner Plaintiff alleges is unconstitutional.

Plaintiff argues that the deposition testimony of the coordinator of St. Louis County's Crisis Intervention Team is evidence of an unconstitutional County custom, in that it indicates that "officers are trained to go ahead and fill out affidavits for commitment for purposes of expedience." Plaintiff's allegation completely distorts the coordinator's testimony; at no point did the coordinator make any such statement or agree with such a statement. In fact, the coordinator's cited testimony suggests that the coordinator thought police officers should, when possible, check with an individual's family before submitting an affidavit in support of her or his commitment; it indicates nothing about the existence of County-wide custom or policy to the contrary.

Additionally, and discussed above in Section III.A.2, a Missouri mental health facility is required to make an independent decision as to whether to admit an individual involuntarily. MO. REV. STAT. § 632.310.2 (1980). Thus, the County could not adopt a custom or policy of relaxed standards that would have a demonstrable effect on the ability of County police to admit individuals into mental health facilities involuntarily. The Court therefore finds that the County and Lee are entitled to summary judgment on this § 1983 claim.

### 4. Plaintiff's Claims against the County and Lee Based on a Failure to Train

Defendants argue that summary judgment is proper on these § 1983 claims because (1) Plaintiff has failed to present evidence indicating that the County deliberately failed to train its officers; and (2) the undisputed facts demonstrate that the County's mental health training is sufficient. Plaintiff contends that he has shown that the County trains its officers to deal with involuntary commitments in an unconstitutional manner.

In order to base § 1983 liability on inadequate police training, a plaintiff must show that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This "deliberate indifference" requires a showing that city policymakers chose one course of action from a number of different alternatives. *Id.* As with § 1983 claims based on an allegedly unconstitutional custom or policy, failure-to-train claims against individuals in their official capacities are equivalent to suits against the governmental entity itself. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 676 (8th Cir. 2007).

Plaintiff has presented insufficient evidence on this claim to survive summary judgment. Plaintiff argues that the County made a deliberate choice to train its officers to fill out affidavits for commitment themselves – instead of involving family members – so that officers can return to work more quickly. The Court has already concluded that the manner in which Thomeczek applied for Plaintiff's commitment was constitutional, and Plaintiff has not presented any evidence of a specific unconstitutional training decision. Plaintiff's claim that the County failed to instruct officers on the proper contents of an affidavit and the need to contact family members likewise fails due to a complete lack of evidence in the record. Moreover, Plaintiff has presented no authority suggesting that either the submission of an affidavit not based entirely on personal

knowledge or the involuntary commitment of an individual without notice to his family is unconstitutional. The Court therefore concludes that summary judgment on these claims in favor of the County and Lee is proper.

### B. Plaintiff's State Law Claims against Lasater and Thomeczek

### 1. Defamation

Plaintiff contends that Thomeczek is liable for defamation based on the police report Thomeczek filed following the incident and the information he provided in the application for Plaintiff's involuntary commitment, and that Lasater defamed Plaintiff by giving the police report to Plaintiff's employer.[13] Defendants argue that all of these communications are privileged under Missouri law.

Missouri recognizes both absolute privilege and qualified privilege as defenses to actions for defamation. Absolute privileges provide complete immunity from an action for defamation, regardless of the defendant's motive. *Barge v. Ransom*, 30 S.W.3d 889, 891 (Mo. App. S.D. 2000). They only apply, however, where public policy requires unhindered freedom of expression, as in judicial, quasi-judicial, legislative, and executive proceedings, and in situations in which "the communication is provided for and required by law." *Id.* at 890. A qualified privilege may apply, on the other hand, where the statement is made in performance of a duty and to another who has a corresponding duty or interest. *Henry v. Halliburton*, 690 S.W.2d 775, 780-81 (Mo. 1985) (internal citations omitted). While an absolute privilege is, of course, absolute, a qualified privilege may be overcome by a showing of actual malice. *Id.* at 781. Actual malice

---

[13]Although the Court has resolved Plaintiff's federal causes of action, the Court exercises supplemental jurisdiction under 28 U.S.C. 1367(a) to decide these remaining claims.

exists where the maker of the statement knew it was false or spoke with reckless disregard for its falsity. *Bugg v. Vanhooser Holsen & Eftink P.C.*, 152 S.W.3d 373, 377 (Mo. App. W.D. 2004).

Although there are persuasive arguments in favor of recognizing an absolute privilege for communications made in police reports by the reporting officer, the Court declines to go so far in the absence of Missouri authority on the subject. The Court concludes, however, that Thomeczek is entitled to a qualified privilege on Plaintiff's defamation claim. Thomeczek was required to make the police report by law, and the police department was required to receive and keep the report as a public record. MO. REV. STAT. § 610.100.2 (2004). The same is true for the sworn application in support of Plaintiff's involuntary commitment; Thomeczek was required by Missouri statute to make the application when he brought Plaintiff to Hyland, and Hyland was required to make a determination whether to accept or decline the application upon receiving it. MO. REV. STAT. § 632.310.3 (1980); MO. REV. STAT. § 632.305.1 (1980).

Lasater was likewise entitled and required to give the police report to Plaintiff's employer. Once Thomeczek filed the police report and the investigation was closed, the report became a public record. MO. REV. STAT. § 610.100.2 (2004). It is undisputed that Lasater and Thomeczek considered the investigation closed once Plaintiff was brought to Hyland. Furthermore, even if the investigation had been ongoing, Missouri law entitles other law enforcement agencies to access such non-public records for employment purposes. MO. REV. STAT. § 610.120.1 (2003). This is precisely what happened here: Plaintiff's employer learned of the incident and requested a copy of the police report from Lasater. As such, Lasater was privileged to communicate the contents of the police report to Plaintiff's employer.

Moreover, Plaintiff has offered no evidence of actual malice in response to Defendants' showing of a qualified privilege; Plaintiff merely alleges that Thomeczek and Lasater failed to

make a detailed investigation and relied on hearsay in making the decision to transport Plaintiff to the medical health facility. Although Plaintiff argues that they would have learned that Crystal had a reputation for dishonesty if they had conducted a more thorough investigation, Plaintiff has neither alleged nor offered any evidence that Lasater or Thomeczek had any knowledge about Crystal prior to the incident. At most, these allegations indicate negligence, not the recklessness that is required for a finding of actual malice. Thomeczek and Lasater are therefore entitled to summary judgment on Plaintiff's defamation claim on grounds of qualified immunity.

### 2. Injurious Falsehood

Having determined that Lasater and Thomeczek are protected from Plaintiff's defamation claim by qualified immunity, Plaintiff's claims for injurious falsehood fail for the same reason. The standard for overcoming a qualified privilege in the context of injurious falsehood is higher than that for defamation, requiring that the plaintiff demonstrate that the speaker made the statement dishonestly and in bad faith – a showing of recklessness is insufficient. *Wandersee v. BP Prods. N. Am., Inc.*, 263 S.W.3d 623, 633, 633 n.4 (Mo. 2008). For the reasons stated above with respect to Plaintiff's defamation claim, Lasater and Thomeczek are also entitled to qualified immunity on his claims for injurious falsehood.

### 3. Tortious Interference with Business Expectancy

Plaintiff contends that Lasater and Thomeczek are liable for tortious interference with business expectancy because they communicated false information to the Creve Coeur Police Department that caused Creve Coeur to terminate his employment. Defendants argue that Plaintiff, as an at-will employee, had no valid expectation of continued employment and that their actions were justified.

The elements of tortious interference with a business expectancy are: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Hensen v. Truman Med. Ctr., Inc.*, 62 S.W.3d 549, 553-54 (Mo. App. W.D. 2001). An at-will employment relationship may still present a valid business expectancy where there is a probability that the employment will continue and a reasonable expectation of financial benefits from it. *Id.* at 553. Generally speaking, a plaintiff must show that the defendant had no legal right to take the challenged action in order to prove lack of justification. *Id.* at 555.

As discussed above, the Court concludes that Lasater and Thomeczek's conduct in submitting the police report and ultimately passing it along to Plaintiff's employer were legally justified, and in fact were required by Missouri statute. Thus, Plaintiff cannot prove all the elements of this cause of action as a matter of law, and Lasater and Thomeczek are therefore entitled to summary judgment on his claims for tortious interference with business expectancy.

### 4. False Imprisonment

Plaintiff claims that Lasater and Thomeczek are liable for false imprisonment because they detained Plaintiff against his will without probable cause. Defendants argue that statutory immunity bars this action.

The Court agrees with Defendants that Lasater and Thomeczek are entitled to statutory immunity. Missouri law provides that peace officers acting pursuant to the statutory procedures for involuntary commitment cannot be held civilly liable for "investigating, detaining, transporting, conditionally releasing or discharging a person" unless they act in bad faith or with gross

negligence.[14] MO. REV. STAT. § 632.440 (1996). Lasater and Thomeczek acted in response to a report that Plaintiff was in possession of firearms and intended to commit suicide, facts that they corroborated by seizing loaded firearms from his vehicle and speaking with Crystal about the suicide note and Plaintiff's state of mind. Knowing that Lasater and Thomeczek had this information, a reasonable fact-finder could not conclude that they were grossly negligent in their decision to take Plaintiff to Hyland for evaluation without first investigating the circumstances more thoroughly.

In short, Plaintiff has not offered sufficient evidence to raise a genuine issue of material fact as to whether Lasater and Thomeczek were grossly negligent or acted in bad faith when they decided to detain Plaintiff and transport him to Hyland. The Court therefore concludes that they are entitled to statutory immunity from Plaintiff's false imprisonment action.

## IV.    CONCLUSION

The Court finds that Defendants are entitled to summary judgment on Plaintiff's claims against Lasater, Thomeczek, the County, and Lee under 42 U.S.C. § 1983 and his state law claims against Lasater and Thomeczek for defamation, injurious falsehood, tortious interference with business expectancy, and false imprisonment.

---

[14] Because the Court resolved Plaintiff's other state law claims on other grounds, the Court expresses no opinion as to whether § 632.440 would confer immunity on Lasater and Thomeczek as to those claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #113] is **GRANTED**.

**IT IS FURTHER ORDERED** that Intervenor's First Sealed Motion for Redaction of Deposition Testimony and Exhibits [doc. #111], Plaintiff's Motion to Enforce [doc. #151], Defendants' Motion for Sanctions for Violation of Protective Order [doc. #152], Plaintiff's Motion to Strike Affidavits [doc. #156], Intervenor's Second Sealed Motion for Redactions [doc. #158], Defendants' Motion to Strike Michael Doe's Testimony and for Sanctions [doc. #164], Intervenor's First Motion in Limine to Enforce Protective Orders During Trial to Prevent Disclosure of Intervenor's Identity [doc. #168], and Defendants' Motion in Limine [doc. #170] are **DENIED** as moot.

Dated this 30th Day of September, 2009.

_E. Richard Webber_
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE